UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

POSTAL POLICE OFFICERS
ASSOCIATION,

       *Plaintiff*,

       v.

UNITED STATES POSTAL SERVICE,

       *Defendant*.

Civil Action No. 23-0675 (CRC)

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................... ii

BACKGROUND ........................................................................................................................... 3

    I.   Statutory Authority Governing Use of Postal Police Officers ............................................ 3

    II.   Agency Guidance Governing Use of Postal Police Officers .............................................. 4

    III.  Events Leading to the Publication of the "Bowers Memo" ............................................... 7

    IV.  The Union's Collective Bargaining Agreement with the Postal Service. ........................... 8

    V.   2020 Decision - Postal Police Officer Association v. U.S. Postal Service ........................ 8

    VI.  2020 Arbitration over the Bowers Memo. ...................................................................... 10

LEGAL STANDARDS ................................................................................................................ 12

    I.   Motions to Dismiss Under Rule 12(b)(1) ........................................................................ 12

    II.   Motions to Dismiss Under Rule 12(b)(6) ........................................................................ 13

ARGUMENT ............................................................................................................................... 14

    I.   Because the Postal Service Has Fully Complied with the Arbitrator's Award, The Union's Complaint Should be Dismissed as Moot. ......................................................................... 14

    II.   To the Extent the Union Seeks Relief Beyond the Scope of the Arbitration Award, this Court Should Dismiss the Complaint for Failure to State a Claim. ................................... 15

CONCLUSION ............................................................................................................................ 17

# TABLE OF AUTHORITIES

Cases ......................................................................................................................... Page(s)

*Air Cargo v. U.S. Postal Serv.*,
    674 F.3d 852 (D.C. Cir. 2012) .................................................................................. 9
*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) .................................................................................................. 14
*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
    827 F. Supp. 836 (D.D.C. 1993) ............................................................................. 14
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 13
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 13
*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016) ................................................................................................ 15
*Curran v. Holder*,
    626 F. Supp. 2d 30 (D.D.C. 2009) .......................................................................... 12
*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) ................................................................................ 13
*Hall v. CIA*,
    437 F.3d 94 (D.C. Cir. 2006) .................................................................................. 15
*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992) ................................................................................ 13
*Hinton v. Dist. of Columbia*,
    Civ. A No. 21-1295 (JDB), 2021 WL 4476775 (D.D.C. Sept. 30, 2021)............... 15
*Knox v. Serv. Emps. Int'l Union, Loc.*,
    *1000*, 567 U.S. 298 (2012) ...................................................................................... 14
*Lipton v. MCI Worldcom, Inc.*,
    135 F. Supp. 2d 182 (D.D.C. 2001) ........................................................................ 13
*McBryde v. Comm. to Rev. Cir. Council Conduct*,
    264 F.3d 52 (D.C. Cir. 2001) .................................................................................. 14
*Papasan v. Allain*,
    478 U.S. 265 (1986) ................................................................................................ 13
*Postal Police Officers Ass'n v. U.S. Postal Service, ("PPOA I")*,
    502 F. Supp. 3d 411 (D.D.C. 2020) .................................................................. passim
*Rann v. Chao*,
    154 F. Supp. 2d 61 (D.D.C. 2001) .......................................................................... 12
*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ................................................................................ 13
*United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada*, AFL-CIO,
    721 F.3d 678 (D.C. Cir. 2013) ................................................................................ 14
*Wright v. Foreign Serv. Griev. Bd.*,
    503 F. Supp. 2d 163 (D.D.C. 2007) ........................................................................ 12
*Zukerman v. U.S. Postal Serv.*,
    961 F.3d 431 (D.C. Cir. 2020) ................................................................................ 14

Statutes

18 U.S.C. § 3061(c) ............................................................................................ 4, 9, 10
18 U.S.C. § 3061(c)(1) .................................................................................. 3, 8, 9, 11, 16
39 U.S.C. § 401 ....................................................................................................... 4
39 U.S.C. § 1203 ..................................................................................................... 8
39 U.S.C. § 1208(b) .............................................................................................. 14

Rules

Federal Rules of Civil Procedure 12(b)(1) ............................................................ 1
Rule 12(b)(6) ......................................................................................................... 13

Other Authorities

PL 92-351 ............................................................................................................ 3, 5

In this action, Plaintiff, the Postal Police Officers Association ("PPOA" or "Union"), which is the certified collective-bargaining representative for Postal Police Officers, has sued Defendant the United States Postal Service ("Postal Service") to confirm and enforce an Arbitration Award. *See* Compl., ECF No. 1.  Because the Postal Service has complied with the relief required under the Arbitration Award and Plaintiff cannot state a claim to compel enforcement of relief beyond that Award, this case should be dismissed as moot and for failure to state a claim.

Indeed, this is not the first case presented to this Court that involves a purported claim by the Union against the Postal Service.  In November 2020, this Court issued a Memorandum Opinion and Order dismissing a prior suit brought by the Union against the Postal Service to challenge the Postal Service's interpretation that Congress restricted Postal Police Officer's jurisdictional law enforcement authority to Postal Service premises.  *See Postal Police Officers Ass'n v. U.S. Postal Service ("PPOA I")*, 502 F. Supp. 3d 411, 418–422 (D.D.C. 2020).  The genesis for the Union's prior complaint was the Postal Service's August 2020 issuance of the "Bowers Memo," which reiterated already-existing policy that "[Postal Police Officers] may not exercise their law enforcement authority in contexts unrelated to Postal Service premises."  *Id.* at 416.  The Union responded to that memo by asking this Court to set it aside or, alternatively, to temporarily enjoin the policy while the parties arbitrated their dispute over the Bowers Memo.  *See id.* at 415.  The Union also moved for injunctive relief to grant Postal Police Officers "off-premises authority."  *Id.*  In dismissing the Union's complaint entirely, this Court concluded that the Postal Service "did not exceed its statutory authority by interpreting the Postal Accountability and Enhancement Act to either require or permit [the Postal Service] to restrict [Postal Police Officer] law-enforcement activities to contexts related to postal real estate."  *Id.*  This Court also rejected the Union's request for a preliminary injunction pending labor arbitration.  *See id.* at 425.

At issue now is the Union's complaint to enforce the award resulting from that labor arbitration. On February 21, 2023, an arbitrator decided the arbitration between the parties. *See* Arbitration Award, ECF No. 1-1. In the award, the Arbitrator sustained the Union's grievance in part, on very narrow grounds, finding that a section of the Bowers Memo that required certain supervisory approval was new and not included in the Postal Services' handbooks, which—under collective bargaining agreement—were to be "continued in effect." *See id.* at 19.[1] The award, therefore, directed the Postal Service to rescind the Bowers Memo and continue to follow guidance contained in agency handbooks that were in existence before the Bowers Memo issued to govern the Postal Service's use of Postal Police Officers.[2] *See id.* at 20. The Arbitrator made clear, however, that he made "no judgment as to the statutory law enforcement authority of Postal Police Officers" and that "[n]othing in this Award should be construed as a directive that the Service *must* deploy [Postal Police Officers] away from Postal Service-controlled property." *See id.* (emphasis added).

Following issuance of the Arbitration Award, the Postal Service complied with the Award and rescinded the Bowers Memo. *See* Declaration of Peter R. Rendina ("Rendina Decl.") ¶ 13 & Ex. 2. Oddly, the Union nonetheless claims that the Postal Service is not compliant with that Award, and therefore brings this instant suit to purportedly enforce the same. *See generally* Compl. Indeed, the Union suggests that the Award also requires the Postal Service to disavow its positions

---

[1]    Unless indicated otherwise, herein, all references to page numbers refers to the ECF pagination of the filing to which the citation refers.

[2]    Nothing in this ruling, however, prohibits the Postal Service from changing these handbooks to include the supervisory approval procedures memorialized in the Bowers Memo through appropriate procedures provided under the collective bargaining agreement, so long as those changes are "fair, reasonable, and equitable." *See* Arbitration Agreement at 18–19 (stating that the Award "makes no judgment as to whether any changes to the Handbooks IS-701 or IS-702, if made in the same manner as the Bowers Memo, would be considered to be 'fair, reasonable, and equitable'" (quoting Section 19.01 of the collective bargaining agreement)).

concerning jurisdictional law enforcement authority, which was never a part of the Award, let alone an issue in dispute during the arbitration.  *See* Arbitration Award at 14, 20.

Thus, because the Postal Service has already complied with the Award, the Union's Complaint should be dismissed as moot.  To the extent the Union seeks to try to compel relief beyond that which the Arbitrator awarded, such claim must also be dismissed for failure to state a claim to compel any action for which this Court could grant relief.

## BACKGROUND

As indicated above, the Union's ongoing dispute with the Postal Service regarding the scope of Postal Police Officers' authority dates back several years.  The following background provides a fuller context for this dispute and the facts surrounding this pending litigation.

### I.   Statutory Authority Governing Use of Postal Police Officers

Congress first authorized the Postal Service to employ Postal Police Officers through Title IV of the Treasury, Postal Service, and General Government Appropriations Act of 1972.  PL 92-351, 86 Stat. 471 (1972).  Thereafter and until 2006, "Congress periodically granted law enforcement authority to Postal Officers through appropriations bills."  *PPOA I*, 502 F. Supp. 3d at 415.  Postal Police Officers serve within the law enforcement arm of the Postal Service known as the U.S. Postal Inspection Service ("Inspection Service").  *See* U.S. Postal Inspection Service, 2021 Annual Report, https://www.uspis.gov/wp-content/uploads/2022/07/USPIS-FY2021-Annual-Report.pdf (last visited July 24, 2023).

In 2006, Congress passed the Postal Accountability and Enhancement Act ("Postal Accountability Act"), which permanently authorized the Postal Service thereafter to employ Postal Police Officers for law enforcement duties, but only "in connection with the protection of property owned or occupied by the Postal Service or under [its] charge and control" and the "persons on the property."  18 U.S.C. § 3061(c)(1).  Notably, this Court has held that the "property," which

Congress intended Postal Police Officers to protect by authorization under this statute, referred only to real estate rather than postal chattels. *See PPOA I*, 502 F. Supp. 3d at 419–20. Thus, under a reasonable reading of the statute, once a Postal Police Officer is away from Postal Service real estate, "the officer's law enforcement authority ends." Arbitration Award, at 11–12 (interpreting 18 U.S.C. § 3061(c)). There is, however, one exception to this jurisdictional limitation, which is for moments of "hot pursuit" when a Postal Police Officer "is engaged in fresh and continued pursuit of an offender for a violation which took place on [Postal Service] property." *Id.*

In addition to law enforcement duties, there are also non-law enforcement security and escort functions performed by Postal Police Officers, which are authorized under 39 U.S.C. § 401 (General Powers of the Postal Service). *See* Rendina Decl. ¶ 12. When performing these security functions off Postal Service premises, however, a Postal Police Officer acts only as armed security because their law enforcement authority ends when the Postal Police Officer leaves Postal Service real property. *See* Arbitration Award at 12.

## II.     Agency Guidance Governing Use of Postal Police Officers

Consistent with the above statutory authority, the specific powers exercised by Postal Police Officers are covered under the Inspection Service Handbook 701 (June 1, 2006), ("Handbook IS-701"), Security Force Operations, and Inspection Service Handbook 702, Postal Police Officer's Guide (June 2002) ("Handbook IS-702") (collectively "Handbooks") as follows:

### Section 112.12, Handbook IS-701

[Postal Police Officers] exercise the power of special police on Postal Service-controlled property. Arrests made under this special police authority must be immediately reported to [the appropriate supervisor].

The powers granted to [Postal Police Officers] are as follows:

a. To enforce Postal Service rules and regulations on Postal Service controlled property.

b. To enforce all laws (including local ordinances) enacted for the protection of persons and property, e.g., assaults, thefts, and vandalism, occurring on Postal Service controlled property.

c. To prevent breaches of the peace occurring on Postal Service controlled property.

d. To control unlawful assemblies occurring on Postal Service controlled property.

e. To issue citations, in accordance with the Magistrate's Program (where applicable), for misdemeanor offenses committed on Postal Service-controlled property.

f. To apprehend individuals for violations of law committed on Postal Service-controlled property.

***Limitations***: The jurisdiction and policing powers of the Security Force do not extend to the service of civil process. *The policing powers of the Security Force are restricted to Postal Service-controlled property, except for "hot pursuit" and in situations requiring mobile patrol or escort protection.* "Hot pursuit" means a chase on foot; Security Force personnel are not authorized to perform high-speed pursuit (i.e., in excess of posted speed limits) in a vehicle. In some states, members of the Security Force may be able to exercise state law enforcement authority. The extent that this state authority may be exercised in the performance of official duties will be determined by written division policy. Otherwise, [Postal Police Officers] have only the authority of citizens.

Ex. 3 (Handbook IS-701) § 112.12 (emphasis added).

**Section 1-4, Handbook IS-702**

**1-4.1 Special Police Authority**

The Postal Service is authorized to employ [Postal Police Officers] as special policemen by Title IV of the Treasury, Postal Service, and General Government Appropriations Act, 1973, (Public Law 92–351, July 13, 1982). Since 1972, this authority has been continued in riders to annual appropriations acts.

These annual riders have made Title 40, United States Code, Section 318, applicable to the Postal Service, thereby conferring on [Postal Police Officers] the powers of special policemen, while on property owned, leased, or under the control of the Postal Service.

**1-4.2 Postal Authority**

In addition, the Postal Service is authorized to issue its own rules and regulations necessary for the management of its property and to establish reasonable penalties for violations of these rules and regulations. The rules and regulations applicable to conduct on Postal Service property are contained in Title 39, Code of Federal Regulations, Section 232.1. (They may also be found, in part, in section 124, Postal Operations Manual.) USPS Poster 7 is a reprint of this section. This poster must be conspicuously displayed on all postal property.

**1-4.3 Title 40, United States Code, Section 318**

This federal statute grants to [Postal Police Officers] the powers of special policemen as follows:

a. To enforce Postal Service rules and regulations on Postal Service controlled property.

b. To enforce all laws (including local ordinances) enacted for the protection of persons and property, e.g., assaults, thefts, and vandalism, occurring on Postal Service controlled property.

c. To prevent breaches of the peace occurring on Postal Service controlled property.

d. To control unlawful assemblies occurring on Postal Service controlled property. The circumstances of all arrests made by [Postal Police Officers] under this special police authority shall be immediately reported to the appropriate security force supervisor.

**1-4.4 Powers Not Granted**

The jurisdiction and policing powers of the security force do not extend to the service of civil process. The policing powers of the security force are restricted to Postal Service controlled property (*Exceptions*: "hot pursuit" and "citizen's arrests." See section 2-3.4 of this manual). The term "hot pursuit" refers only to a chase on foot. Postal Police Officers and postal police supervisory or management personnel are not authorized to perform high-speed pursuit (i.e., in excess of posted speed limits) in a vehicle.

Ex. 4 (Handbook IS-702) § 1-4.[3]

---

[3]      Section 2-3.4 referenced in Section 1-4.4 of Handbook IS-702 further provides:

**Exercise of Nonstatutory Authority**

PPOs while on official duty may find it necessary to place persons under arrest for violations of the law which do not occur on postal property; or arrest persons who

### III.     Events Leading to the Publication of the "Bowers Memo"

Despite Congress' 2006 mandate under the Postal Accountability Act, Postal Police Officers continued to perform some law enforcement duties off Postal Service real property.  *See PPOA I*, 502 F. Supp. 3d at 416; *see also* Rendina Decl. ¶ 9.  In 2016, however, the Postal Service began to raise concerns as to whether this use of Postal Police Officers off Postal Service real property was permitted under statute.  *See* Rendina Decl. ¶ 9.  In May 2019, the Inspection Service held a National Leadership Team meeting, where all Division Inspectors in Charge were told that they were not to use Postal Police Officers for law enforcement activities off Postal Service real property.  *See id.* ¶ 10.

On August 24, 2020, a management communication—*i.e.* the Bowers Memo—was sent to senior Inspection Service management reiterating the same message, namely that Postal Police Officers were not to be used to perform law enforcement functions off of Postal Service real property.  *See id.* ¶ 12; *see also* Ex. 1.  The Bowers Memo further stated that "Effective immediately any off-property utilization of [Postal Police Officers] requires prior approval of the [Deputy Chief Inspector] over the Division with concurrence of the DCI over the Security Group."

---

at the time of arrest are not on postal property. Except for "hot pursuit" provisions, the officer is generally making the arrest as a private citizen. Some states do not recognize citizen's arrests. [Postal Police Officers] should be guided by state law regarding citizen's arrests, as well as division policy. Due care must be exercised in making a citizen's arrest.

Ex. 4 (Handbook IS-702) § 2-3.4.

*Id.* (quoting the Bowers memo).  The memo further reiterated that the use of Postal Police Officers off Postal Service real property was prohibited pursuant to 18 U.S.C. § 3061(c)(1)–(2).  *See id.*

### IV.  The Union's Collective Bargaining Agreement with the Postal Service.

Pursuant to the Postal Reorganization Act of 1970, the Union is a certified collective-bargaining representative for Postal Police Officers employed by the Postal Service around the United States.  *See* 39 U.S.C. § 1203; Compl. ¶ 7.  Over the years, the Union and the Postal Service have been parties to a series of collective bargaining agreements setting forth the terms and condition of employment of Postal Police Officers.  *See* Compl. ¶ 8.  Article 19 of the current collective bargaining agreement between the Postal Service and the Union provides that with regard to the Postal Service's handbooks and manuals, "[t]hose parts of all handbooks, manuals and published regulations of the Postal Service that directly relate to wages, hours or working conditions, as they apply to [Postal Police Officers] covered by this Agreement shall contain nothing that conflicts with this Agreement and shall be continued in effect except that the Employer shall have the right to make changes that are not inconsistent with this Agreement and that are fair, reasonable, and equitable."  *Id.* ¶ 10 (quoting the Article 19 of the collective bargaining agreement); *see also* Arbitration Award at 14.  Article 19 of the collective bargaining agreement further sets out the procedures for making changes to a handbook, including providing notice to the Union of any intent to change the provisions of Handbooks IS-701 and IS 702.  *See id.* at 6, 14.

### V.  2020 Decision - Postal Police Officer Association v. U.S. Postal Service

As discussed above, in November 2020, this Court issued a Memorandum and Order dismissing an August 2020 suit brought by the Union against the Postal Service to set aside, or alternatively enjoin, the "Bowers Memo."  *See PPOA I*, 502 F. Supp. 3d 411.  When ruling, this

Court noted that the Postal Service is generally "exempt from review under the Administrative Procedure Act, but its actions are reviewable to determine whether it has acted in excess of its statutory authority" (i.e., whether it acted *ultra vires*). *Id.* at 418 (citing *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 858 (D.C. Cir. 2012)). However, the Court dismissed the Union's *ultra vires* claim, finding that promulgation of the Bowers Memo did not exceed the Postal Service's statutory authority. *See id.* at 418–424. Moreover, noting that the parties were proceeding to arbitration on the issue of whether the Bowers Memo violated the parties' collective bargaining agreement, this Court declined to enter an injunction in the interim. *See id.* at 425–27.

In its Order, this Court found: (1) that the Postal Service's determination that Postal Police Officers' jurisdiction was restricted to postal real estate constituted a reasonable interpretation of 18 U.S.C. § 3061(c), which was entitled to deference; (2) that its determination follows "from what is probably the most natural reading of the statute, if not the sole permissible reading;" and, as stated above, (3) dismissed the Union's lawsuit and its request for injunctive relief. In that regard, this Court noted that the statutory "text tends to suggest, without quite making clear, that Congress intended for Postal Police Officer to protect postal real estate rather than other types of postal property." *Id.* at 419. In opining that limiting the jurisdiction of Postal Police Officers to real property was the most natural reading of the statute, the Court pointed to specific language in the law which suggested such a result:

> Congress later refers back to that same "property" several times, sometimes using language that suggests an exclusive focus on real property. For example, the statute authorizes [Postal Police Officers] to protect "persons on that property"; "on" would be an odd preposition to describe how persons are situated with respect to chattel property. *Id.* (emphasis added); *see also id.* § 3061(c)(3)(B) (USPS may authorize [Postal Police Officers] to "conduct investigations, on and off the property in question" (emphasis added)). Perhaps more tellingly, Congress adds that [Postal Police Officers] may engage in "duty in areas outside the property to the extent necessary to protect the property and persons on the property." *Id.* § 3061(c)(1) (emphasis added). By granting this limited authorization for PPO

> activity "outside the property," Congress suggests that all other PPO duties must
> take place inside "the property," which in turn suggests that "the property" consists
> of real estate.

*Id*. at 419-20.  This Court also noted that, even if the text of statute did not unambiguously limit the authority of the Postal Police Officers to protecting the real property of the Postal Service, the statute certainly did not compel the Postal Service to utilize Postal Police Officers to protect property outside of real property.  *Id.* at 421.

## VI.    2020 Arbitration over the Bowers Memo.

When the Bowers Memo issued, the Union also filed a national-level grievance contending that its issuance violated the terms of the collective bargaining agreement, as it relates to the wage, hours or working conditions of Postal Police Officers by purportedly taking away Postal Police Officer's law enforcement authority off of Postal Service real estate.  *See* Compl. ¶¶ 12–14; Arbitration Award at 6.  Among its many requests, the Union asked the Arbitrator to direct the Postal Service to rescind the Bowers Memo and abide by the policy statements contained in Handbooks IS-701 and IS-702.  *See* Arbitration Award at 7.  The Union further asked the Arbitrator: (1) to find that the Postal Service be required to recognize that Postal Police Officers have law enforcement authority off Postal Service real property and (2) to reach a conclusion as to the scope of the Postal Police Officers' law enforcement authority under the statute.  *See id.* at 7–8.

The arbitration hearing was held in June and July of 2022, and Arbitrator Barry Simon issued a decision on February 21, 2023.  *See id.* at 1.  In his decision, the Arbitrator cited to the Postal Service's statutory authority under 18 U.S.C. § 3061(c), a Postal Police Officer's job description, and the transcript from the parties' December 2017 National Labor-Management Meeting to show that the limitation on a Postal Police Officer's law enforcement duties off-

property was not new policy implemented by the Bowers Memo that the Union could grieve, because it had been a consistent policy taken by the Postal Service for some time.  *See id.* at 12–14.  The Arbitrator, however, did narrowly find that the portion of the Bowers memo that required supervisory approval of off-property assignments was new, and that the Union's challenge to that narrow portion of the memo was timely.  *See id.* at 18.  In the end, the Arbitrator determined that, because the added supervisory requirement affected the working conditions of Postal Police Officers, then (pursuant to Article 19 of the Collective Bargaining Agreement) this change could not be performed unilaterally, but instead required that the Postal Service follow the procedures under Article 19 for changing its manuals and handbooks in a fair, reasonable, and equitable manner and with proper notice to the Union.  *See id.* at 18–19.  As a remedy, the Arbitrator then directed the Postal Service to rescind the Bowers memo and follow guidance under its Handbooks IS-701 and IS 702 to govern the use of Postal Police Officers.  *See id.* at 19–20.

In reaching this decision, however, the Arbitrator expressly provided that he was making no judgment as to the statutory law enforcement authority of Postal Police Officers.  Nor did the Arbitrator make any judgment as to whether any changes to the Handbooks IS-701 or IS-702, if made in the same manner as the Bowers Memo, would not be considered to be "fair, reasonable, and equitable" under the terms of the Collective Bargaining Agreement.  *See id.* at 19.  Finally, the Arbitrator recognized, "as does the Union, that there is a distinction between the jurisdictional and law enforcement authority of [Postal Police Officers] and how management chooses to deploy them in the field."  *See id.*  The Arbitrator concluded with an unequivocal statement that "[n]othing in this Award should be construed as a directive that the [Postal] Service *must* deploy [Postal Police Officers] away from Postal Service-controlled real property."  *Id.* (emphasis added).

Pursuant to the Arbitration Award, on March 9, 2023, Deputy Chief Inspector Peter R. Rendina issued a written recission of the Bowers Memo. *See* Rendina Decl. ¶ 13; *see also* Ex. 2. In addition, in his declaration, Mr. Rendina further explains that "prior to and since the recission of the Bowers Memo, the Inspection Service has followed Handbooks IS-701 and IS-702" regarding the utilization of Postal Police Officers. *See id.* ¶ 14.

<div align="center">*     *     *</div>

Following the issuance of the Arbitrator's Award, the Union filed the instant Complaint, purportedly to confirm and enforce the Award. Because the Postal Service has already complied with the Award, the Union's Complaint should be dismissed as moot. Moreover, to the extent the Union seeks to compel relief beyond that which the Arbitrator awarded, such enforcement claim must be dismissed for failure to state a claim. Thus, the Court should dismiss this case entirely.

<div align="center">**LEGAL STANDARDS**</div>

**I.   Motions to Dismiss Under Rule 12(b)(1).**

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "[T]he plaintiff bears the burden of establishing that the court has jurisdiction." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Griev. Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and

<div align="center">12</div>

quotation marks omitted).  A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint."  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted).  Finally, a court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction.  *See Herbert v. Nat'l Acad. of Scis*., 974 F.2d 192, 197 (D.C. Cir. 1992).

## II.    Motions to Dismiss Under Rule 12(b)(6).

Under Rule 12(b)(6), the Court may dismiss a complaint where a plaintiff fails to state a claim upon which relief can be granted.  *See PPOA I*, 502 F. Supp. 3d at 417.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff.  *See Iqbal*, 556 U.S. at 678.  However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  The focus is on the language in the complaint and whether it sets forth sufficient factual allegations to support a plaintiff's claims for relief.

On a motion to dismiss, under Rule 12(b)(6), the Court may consider, in addition to the facts alleged in the complaint, documents either attached to, or incorporated into the complaint by reference, as well as matters of which it may take judicial notice.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997); *see also Lipton v. MCI Worldcom, Inc.*,

135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("[T]he court may consider the defendant's supplementary material without converting the motion to dismiss into one for summary judgment. This Court has held that 'where a document is referred' to in the complaint and is central to plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'").

## ARGUMENT

### I. Because the Postal Service Has Fully Complied with the Arbitrator's Award, The Union's Complaint Should be Dismissed as Moot.

Although it is well established that this Court has statutory jurisdiction to enforce the Arbitration Award that was actually issued by the Arbitrator, under the Postal Reorganization Act of 1970, 39 U.S.C. § 1208(b), *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 827 F. Supp. 836, 838 (D.D.C. 1993) (affirming that arbitration awards are "final decisions on the merits and are consistent with the terms of the Collective Bargaining Agreement."), its constitutional jurisdiction is lacking. *See United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO*, 721 F.3d 678, 687 (D.C. Cir. 2013).

"Article III, Section 2 of the Constitution permits federal courts to adjudicate only actual, ongoing controversies." *McBryde v. Comm. to Rev. Cir. Council Conduct*, 264 F.3d 52, 55 (D.C. Cir. 2001) (quotation marks omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks and internal citation omitted). A case must be dismissed for mootness "when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020) (quoting *Knox v. Serv.*

*Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)); *accord, e.g.*, *Hinton v. Dist. of Columbia.*, Civ. A No. 21-1295 (JDB), 2021 WL 4476775, at *5 (D.D.C. Sept. 30, 2021) ("[I]f events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." (citation omitted)); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." (quotation marks omitted)).

Here, because the Union seeks to compel enforcement of an Arbitration Award with which the Postal Service has already complied, the Court must dismiss this case as moot, since there is nothing left to enforce.  *See Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) ("The rule against deciding moot cases forbids federal courts from rendering advisory opinions or 'deciding questions that cannot affect the rights of litigants in the case before them.'" (citation omitted)).  Specifically, the Union asks this Court to compel the Postal Service to rescind the Bowers memo and abide by its handbooks.  *See* Compl. ¶ 27.  But the Award already directed the Postal Service to perform these tasks by stating that "[t]he Bowers Memo is to be rescinded and the utilization of Postal Police officers is to be governed by the provisions of Handbooks IS-701 and IS-702."  Arbitration Award at 20.  And, pursuant to that Award, the Postal Service has already rescinded the Bowers memo and declared that it has been and continues to abide by Handbooks IS-701 and IS-702.  *See* Rendina Decl. ¶ 13.  Accordingly, to the extent the Union seeks to enforce the Arbitration Award, its Complaint should be dismissed as moot.

## II.   To the Extent the Union Seeks Relief Beyond the Scope of the Arbitration Award, this Court Should Dismiss the Complaint for Failure to State a Claim.

In addition to rescinding the Bowers memo and abiding by Handbooks IS-701and IS 702, the Union claims that the Arbitration Award also requires the Postal Service "to disavow any

professed position on Postal Police Officers' law enforcement jurisdiction that differs from the one set forth in the handbooks." *See* Compl. ¶ 27. This is incorrect. Nothing in the Arbitration Award requires the Postal Service "to disavow any professed position on the Postal Police Officer's law enforcement jurisdiction that differs from the one set forth in the handbooks." To the contrary, the Arbitrator found that the debate over the Postal Police Officers' jurisdictional law-enforcement authorities was not new and that neither the Bower's memo nor the Postal Service's position regarding the Postal Police Officer's law-enforcement authority, as restricted to Postal Service premises, was inconsistent with the provisions in the Handbooks outlining that same limited jurisdictional authority. *See* Arbitration Award at 13, 17. Thus, the Arbitrator made clear that the Award "should not be construed as a directive that the Service must deploy [Postal Police Officers] away from Postal Service-controlled property."[4] *Id*.

Instead, the Arbitrator recognized "that there is a distinction between the jurisdictional and law enforcement authority of [PPOs] and how management chooses to deploy them in the field." *See id.* 19. The Arbitrator found that the Bowers' memo added a requirement for supervisory approval lacking in the Handbooks. *See id.* at 17. Thus, because this narrow provision of the Bowers memo concerning supervisory approval was inconsistent with the Handbooks, the terms of the parties' collective bargaining agreement required that the provisions under the Handbooks needed to be "continued in effect," and the memo, rescinded. *See id.* at 18; *but see supra* note 2. The Award, indeed, does not require any more.

---

[4]       Indeed, this Court reached a similar conclusion in *PPOA I*, finding that 18 U.S.C. § 3061(c)(1) does not "compel USPS to deploy [Postal Police Officers] to protect every piece of Postal property … Insofar as the Union argues that the text of § 3061(c)(1) clearly deprives [the Postal Service] of discretion to restrict the powers of its off-duty [Postal Police Officers], it reads too much into a single use of 'shall.'" *PPOA I*, 502 F. Supp. 3d at 421.

Therefore, because the Complaint does not allege facts that would justify a claim for relief—i.e. enforcing an action that an award never required—the claim is subject to dismissal under Rule 12(b)(6). *See PPOA I*, 502 F. Supp. 3d at 427.

## CONCLUSION

For the foregoing reasons, Defendant requests that the Court dismiss this action.


Dated: July 24, 2023                    Respectfully submitted,

                                        MATTHEW M. GRAVES, D.C. Bar. #481052
                                        United States Attorney

                                        BRIAN P. HUDAK,
                                        Chief, Civil Division

                        By:     */s/ Anna D. Walker*
                                        ANNA D. WALKER
                                        Assistant United States Attorney
                                        United States Attorney's Office, Civil Division
                                        601 D Street, NW
                                        Washington, DC 20530
                                        Phone:  (202) 252-2544

                                        *Counsel for the United States of America*