UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **POSTAL POLICE OFFICERS ASSOCIATION**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES POSTAL SERVICE**, <br><br> Defendant. | Case No. 23-cv-675 (CRC) |

**MEMORANDUM OPINION AND ORDER**

The union that represents Postal Police Officers ("PPOs") remains embroiled in a long-running dispute with the U.S. Postal Service ("Postal Service" or "USPS") over whether PPOs are legally authorized to exercise law enforcement duties away from Postal Service premises. This Court previously found the controlling statute ambiguous on the question and, applying the familiar Chevron framework, held that USPS had reasonably interpreted the law to answer the question in the negative. The union simultaneously pursued a grievance asserting that the Postal Service's issuance of a management directive stating that PPOs may not exercise police powers off grounds violated the parties' collective bargaining agreement by changing prior USPS operating guidelines without due notice. An arbitrator sustained the grievance and ordered USPS to rescind the offending directive and conform its use of PPOs to the prior guidelines.

The union has now petitioned the Court to confirm and enforce the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, and the Postal Reorganization Act, 39 U.S.C. § 1208(b). The Postal Service has moved to dismiss the petition principally on mootness grounds, arguing that its rescission of the management directive has eliminated any live dispute between the parties. Finding that the union has raised a genuine dispute over whether USPS has

complied with the arbitrator's ruling notwithstanding its retraction of the directive, and seeing no other obstacles to confirmation of the award, the Court will grant the union's petition, deny the Postal Service's motion to dismiss, and remand the matter to the arbitrator to hash out the parties' differences.

I. **Background**

The Court draws the following background from the arbitration award and the undisputed record materials submitted by the parties.

The Postal Police Officers Association ("PPOA" or "Union") is the collective-bargaining representative for PPOs employed by USPS in its Postal Inspection Service. Opp'n Ex. O (Collective Bargaining Agreement), at § 1.01. At all relevant times, PPOA and the Postal Service have operated under a collective bargaining agreement ("CBA"). One section of the CBA establishes that all aspects of Postal Service handbooks and published regulations that relate to PPO wages, hours, or working conditions "shall be continued in effect" (or, in other words, are incorporated into the CBA). Id. § 19.01. The agreement further provides that USPS cannot make changes to these handbook or regulation provisions without first giving the Union 60 days' written notice and an opportunity to be heard. Id. § 19.02. Any such change must also be "fair, reasonable, and equitable." Id. § 19.01.

On August 25, 2020, Deputy Chief Inspector of the Postal Inspection Service, David Bowers, issued a "management communication" stating the Service's position that "PPOs may not exercise [any] law enforcement authority in contexts unrelated to Postal Service premises." Mot. Dismiss Ex. 1 ("Bowers Memo"). The memorandum continued that "any off property utilization of PPOs requires prior approval of" supervisory management officials. Id. The Union immediately challenged the Bowers Memo, both through an arbitration under the CBA's

grievance procedure and a lawsuit in this Court seeking to enjoin the memo's enforcement. See Postal Police Officers Ass'n v. U.S. Postal Serv., 502 F. Supp. 3d 411 (D.D.C. 2020). Because USPS actions are generally exempt from review under the Administrative Procedure Act, the Court considered only the narrow question of whether the Service had acted *ultra vires* in issuing the Bowers Memo. Id. at 418 (citing N. Air Cargo v. U.S. Postal Serv., 674 F.3d 852, 858 (D.C. Cir. 2012)). The Court did not consider whether the memo conflicted with internal USPS regulations because such a conflict "would not, by itself, mean that USPS 'acted in excess of its statutory authority,' which is the sole basis for relief on an *ultra vires* claim." Id. (quoting N. Air Cargo, 674 F.3d at 858). Instead, this related question came before the arbitrator, Barry E. Simon.

In a February 2023 ruling, the arbitrator determined that the Bowers Memo conflicted with Postal Service handbook provisions IS-701 and IS-702, which were "continued in effect" under (i.e., were incorporated into) the CBA. Pet. Ex. 1 ("Arbitration Award"), at 18. IS-701 states in relevant part that "[t]he policing powers of [PPOs] are restricted to Postal Service-controlled property, *except for 'hot pursuit' and in situations requiring mobile patrol or escort protection*." Id. at 17 (emphasis added). Similarly, IS-702 lists "hot pursuit" and "citizen's arrests" as "exceptions" to the general rule that "policing powers of the security force are restricted to Postal Service controlled property." Id. at 16. In the arbitrator's view, IS-701's "reference to 'situations requiring mobile patrol or escort protection' implies such work is part of the normal duties and responsibilities of PPOs." Id. at 17. Under the Bowers Memo, however, these types of assignments could only be performed with prior management approval, which suggested to the arbitrator that they were "anything but routine." Id. The arbitrator therefore concluded that the memo's prior approval requirement conflicted with IS-701. Id. It did not

3

matter that USPS disavowed the relevant IS-701 provision as an incorrect description of law. Because the provision "remained unchanged," the arbitrator found that the Service may not alter it by "'management instruction' or anything else that purports to vary the jurisdiction and law enforcement authority of PPOs from that contained in the Handbook." Id. at 17–18.  Rather, the CBA required USPS to undertake the process described in section 19.02, including written notice to the Union.  Id. at 18.  The arbitrator therefore sustained the Union's grievance.  As for remedy, the award stated: "The Bowers Memo is to be rescinded and the utilization of Postal Police Officers is to be governed by the provisions of Handbooks IS-701 and IS-702." Id. at 19. Within weeks, the new Deputy Chief Inspector, Peter Rendina, rescinded the memo.  Mot. Dismiss Ex. 2.

Days later, the Union filed a petition to confirm the award in this Court.  Pet. at. 1. Despite the rescission of the Bowers Memo, the petition alleges that "the Postal Service has evidently refused to abide by Arbitrator Simon's decision" by "inform[ing] its managers and supervisors that it did not believe it needed to comply with the decision" and "publish[ing] the same position to news media outlets."  Id. ¶ 28.

USPS moved to dismiss the petition.  It first seeks dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), contending that the Postal Service has fully complied with the award by rescinding the Bowers Memo and abiding by Handbooks IS-701 and IS-702, thereby mooting the case and depriving the Court of jurisdiction to enforce the award.  Mot. Dismiss at 12.  Alternatively, to the extent the Union seeks relief beyond the scope of the arbitration award—namely, any relief requiring USPS "to disavow any professed position on PPOs' law-enforcement jurisdiction," Pet. at ¶ 27—the Service seeks dismissal for failure to state a claim under Rule 12(b)(6).  As the Service puts it, a claim seeking that relief must be

dismissed because it would require "enforcing an action that [the] award never required." Mot. Dismiss at 17.

PPOA followed with a consolidated opposition to the Service's motion to dismiss and cross-motion to confirm the award. The Union's brief reiterates its contention that the Postal Service has failed to comply with the award by maintaining "its position—[] in public and in private—that PPOs lack any law-enforcement authority away from postal service real estate" and by relying on that purported lack of authority "as an excuse to justify refusing to deploy PPOs on mail-theft and carrier-protection patrols they used to regularly perform." Opp'n at 19. The Union further contends that, even if the Service had complied with the arbitrator's award, the Court still would have jurisdiction to confirm the award because the Federal Arbitration Act simply makes judicial confirmation the final step in an arbitration proceeding, regardless of the non-movant's compliance. Id. at 24–26. The Court halted briefing on PPOA's cross-motion, noting that it would consider the motion to dismiss fully briefed after receipt of the government's reply. Min. Order (Oct. 17, 2023).[1]

In reply, USPS maintains its position that the case is moot. It also raises an argument that it did not present in its motion to dismiss: The Federal Arbitration Act does not authorize judicial confirmation of an award without both parties' prior agreement, which the Service claims is absent here. Reply at 10–11. The Union's petition and the Service's motion to dismiss are now ripe for review.

---

[1] The Federal Arbitration Act provides that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6. Accordingly, the Court may grant the Union's original petition to confirm the award, ECF No. 1, without separately ruling on the Union's later-filed motion to confirm the award, ECF No. 15.

## II. Legal Standards

The Union has petitioned the Court to confirm the arbitration award pursuant to the Federal Arbitration Act ("FAA"). Pet. at 1. "[J]udicial review of arbitral awards is extremely limited," Kanuth v. Prescott, Ball & Turben, Inc., 949 F.2d 1175, 1178 (D.C. Cir. 1991), and a court "must confirm an arbitration award unless it is vacated, modified or corrected." Ray v. Chafetz, 236 F. Supp. 3d 66, 75 (D.D.C. 2017). The Court may "properly consider[] the evidentiary materials submitted by the parties" in reviewing a confirmation petition under the FAA. Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria, 962 F.3d 576, 585 (D.C. Cir. 2020) (citing TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 940 (D.C. Cir. 2007)).

"A party opposing confirmation may [] seek affirmative relief through a motion of its own." Id. Here, the Postal Service has moved to dismiss the Union's petition pursuant to Rules 12(b)(1) and 12(b)(6). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of demonstrating that the Court has subject matter jurisdiction over his claims. See Georgiades v. Martin–Trigona, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984) (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)). The Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

While "Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction . . . [Rule] 12(b)(6) presents a ruling on the merits with res judicata effect." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). Therefore, on a 12(b)(6) motion, it is the defendant who bears the burden of proof and "dismissal is inappropriate unless the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (internal quotation marks omitted).

6

### III. Analysis

The Postal Service does not dispute the validity of the award, only the Court's jurisdiction to confirm or enforce it. The Court will first address the Service's argument that its compliance has mooted the petition. Finding that the petition is not moot, the Court will then consider, and reject, the Service's belated argument that the Court lacks jurisdiction to confirm the award under the FAA. Finally, the Court will assess the merits of the Union's petition.

#### A. Mootness

A petition to enforce or vacate an arbitration award may become moot if subsequent events have completely eradicated the court's ability to provide effective relief. See United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO, 721 F.3d 678, 687 (D.C. Cir. 2013) (citing Nat'l Football League Players Ass'n v. Pro Football, Inc., 56 F.3d 1525, 1527 (D.C. Cir. 1995), vacated in other part on reh'g, 79 F.3d 1215 (D.C. Cir. 1996)). However, "[a] case remains live '[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation.'" Id. (quoting Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 307 (2012)). The Service contends that because it has rescinded the Bowers Memo and continues to abide by its handbooks, the Union's petition for confirmation and enforcement of the award is now moot. Mot. Dismiss at 15. "The burden of demonstrating mootness is a heavy one." Los Angeles Cnty. v. Davis, 440 U.S. 625, 631 (1979) (cleaned up). The Service has failed to meet that burden here.

As noted above, the arbitrator's award contained two directives to USPS: (1) that "the Bowers Memo is to be rescinded," and (2) that "the utilization of Postal Police Officers is to be governed by . . . IS-701 and IS-702." Arbitration Award at 19. There is no dispute that the Postal Service has complied with the first directive. The issue is whether it complied with the

second. Which leads to the question: What does it mean to "utilize" PPOs as "governed by" handbooks IS-701 and IS-702?

On USPS's reading, the award found the Bowers Memo to be in conflict with the handbooks only insofar as it "required supervisory approval of off-property assignments." Mot. Dismiss at 11. According to the Service, the award found both the Bowers Memo and USPS's interpretation of PPOs' off-site law enforcement authority to be consistent with the Service's internal guidelines. Reply at 1 (citing Arbitration Award at 17 ("Nearly all references in both Handbooks . . . impl[y] the scope of PPO jurisdiction and authority is limited to real property owned or controlled by the Postal Service, which is consistent with the position taken by the Service for some time . . . . [and] the position taken in the Bowers Memo.")). And the award said nothing about whether USPS had to disavow its legal position that PPOs lack authority to exercise police powers off premises. Id. at 4. The Service thus argues that with supervisory approval now by the wayside, USPS is "utilizing" PPOs consistent with the handbooks, as directed by the arbitrator. Id. at 3.

The Service's interpretation of the award makes sense. Yet some uncertainty remains. As the Union highlights, the arbitrator determined that the Bowers Memo must be rescinded in part because it "purport[ed] to vary the jurisdiction and law enforcement authority of PPOs from that contained in the Handbook." Opp'n at 18 (quoting Arbitration Award at 18). Specifically, the arbitrator pointed to the "Limitations" paragraph of Handbook IS-701 as the "one distinguishing aspect" of USPS's internal guidelines. Arbitration Award at 17; see Opp'n Ex. H (2007 Update to IS-701), at 2 ("The policing powers of the Security Force are restricted to Postal Service-controlled property, except for 'hot pursuit' and in situations requiring mobile patrol or escort protection."). A natural reading of this provision suggests that when PPOs are engaged in

"hot pursuit" or "in situations requiring mobile patrol or escort protection," they possess the same "policing powers" they possess on Postal Service property. As the arbitrator pointed out, USPS managers have discretion not to deploy PPOs off-site. But when they do, it is undisputed that USPS does not make these exceptions to PPOs' policing authority. Redina Decl. ¶ 12 (noting that escort functions are performed without law enforcement authority). Accordingly, if the arbitral award requires USPS to allow PPOs to undertake law-enforcement duties when it chooses to deploy them in the limited circumstances noted in Handbook IS-701 (as the Union claims it does), USPS arguably is not in compliance with the award.

In light of these two competing interpretations of the award, the Court finds that a live controversy exists and, accordingly, the petition is not moot.[2]

B. Jurisdiction under the FAA

The Postal Service next protests that the FAA does not supply statutory jurisdiction to confirm the award because the parties have not previously agreed to judicial confirmation of arbitral awards. Reply at 10–11. "Although the [FAA] constitutes federal law, 'the Supreme Court has interpreted the statute as not itself bestowing jurisdiction on the federal district courts.'" Karsner v. Lothian, 532 F.3d 876, 882 (D.C. Cir. 2008) (quoting Kasap v. Folger Nolan Fleming & Douglas, Inc., 166 F.3d 1243, 1245–46 (D.C. Cir. 1999)). In this case, the

---

[2] In light of this finding, the Court need not reach PPOA's alternative argument that the FAA supplies the Court with jurisdiction to confirm the award regardless of whether the Postal Service has complied with it. There is a split of opinion among several circuits on this issue and the D.C. Circuit appears not to have weighed in. Compare Teamsters Local 177 v. United Parcel Serv., 966 F.3d 245, 251 (3d Cir. 2020) (holding that "[u]nder the FAA a party's injuries are only fully remedied by the entry of a confirmation order") and Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007) (finding that "[a]t the confirmation stage, the court is not required to consider the subsequent question of compliance") with Derwin v. Gen. Dynamics Corp., 719 F.2d 484, 492 (1st Cir. 1983) (considering a state law claim but noting "the prudential values of Article III [] militate against ministerial confirmation of awards in the absence of a concrete dispute").

9

Court's jurisdiction flows from the Postal Reorganization Act.  Am. Postal Workers' Union, AFL-CIO v. U.S. Postal Serv., 646 F. Supp. 2d 1, 3 (D.D.C. 2009); see also Pet. at 2.  The Service acknowledges this statutory foothold in its opening brief, stating: "[I]t is well established that this Court has statutory jurisdiction to enforce the Arbitration Award that was actually issued by the Arbitrator, under the Postal Reorganization Act of 1970."  Mot. Dismiss at 14 (citing 39 U.S.C. § 1208(b); Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 827 F. Supp. 836, 838 (D.D.C. 1993)).  In its reply brief, however, the Service contends that this Court lacks statutory jurisdiction to confirm the arbitration award because the FAA's requirements have not been met.  Reply at 10–11.  "Ordinarily, '[i]ssues may not be raised for the first time in a reply brief.'"  See United States v. Apodaca, 251 F. Supp. 3d 1, 5 (D.D.C. 2017).  Moreover, beyond a passing assertion that PPOA's claim to enforce the arbitral award "fails for want of statutory jurisdiction, as well," Reply at 10, USPS largely presents this discussion in support of its assertion that the FAA is not an end-run around Article III rather than as an independent jurisdictional defect.  Still, the Court must be certain of its jurisdiction before proceeding and will therefore assess the Service's argument.

As the Service points out, judicial confirmation of an arbitration award under the FAA is only available if the parties have "in their agreement, a provision that a judgment of the court shall be entered upon the award made pursuant to the arbitration."  Reply at 10–11 (quoting 9 U.S.C. § 9).  The parties' CBA states that "the arbitrator's decision shall be final and binding," but does not mention judicial confirmation.  Opp'n Ex. O, at § 15.05(b).  Without this explicit provision, the Service contends, the parties' agreement does not require judicial confirmation as the last step of arbitration and, therefore, the FAA does not authorize the Court to confirm the award.  See Reply at 10–11.  But the D.C. Circuit has held that where an arbitration agreement

"provide[s] that an award 'shall be *final and binding* upon the parties,'" it is "sufficient" to satisfy § 9. Ace/Cleardefense, Inc. v. Clear Def., Inc., 47 F. App'x 582 (D.C. Cir. 2002) (emphasis in original) (quoting Revere Copper & Brass Inc. v. Overseas Private Inv. Corp., 628 F.2d 81, 82 (1980)). Because the CBA here so provides, the Court may confirm the arbitral award under the procedures created by the FAA.

    C.  Confirmation and Enforcement of the Award

Satisfied with its jurisdiction, the Court proceeds to the merits of the Union's petition for an order confirming and enforcing the arbitration award. As to confirmation, "the court *must* grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9 (emphasis added). Though the FAA specifies a handful of circumstances where modification or vacatur of an arbitral award may be proper, see id. §§ 10, 11, USPS did not move for either within the 90-day period allotted for such a motion. See id. § 12. Moreover, the Service "should have included all arguments and supporting affidavits for denial of the Petition in its response to the Petition." Balkan Energy Ltd. v. Republic of Ghana, 302 F. Supp. 3d 144, 149 n.2 (D.D.C. 2018). Because the Court has no grounds to vacate, modify, or correct the arbitral award, "it must grant the petition to confirm the award." Contech Const. Prod., Inc. v. Heierli, 764 F. Supp. 2d 96, 114 (D.D.C. 2011) (citing Adkins v. Teseo, 180 F. Supp. 2d 15, 18 (D.D.C. 2001)).

As to enforcement, the parties dispute what the award required of USPS when it directed that "utilization of Postal Police Officers . . . be governed by the provisions of Handbooks IS-701 and IS-702." Arbitration Award at 19. As discussed above, the Postal Service contends that mere rescission of the Bowers Memo with its attendant prior approval requirement was sufficient while the Union argues that the award further required disavowal of the statutory interpretation espoused in the memo. While the language of the award clearly does not direct disavowal of the

Service's long-held position on PPO law-enforcement authority, it is unclear whether utilization in accordance with the handbooks *requires* USPS to make exceptions in the circumstances described in Handbook IS-701 or simply *allows* for an exception without prior approval. Because the award is "susceptible to more than one interpretation," it is "ambiguous." See Am. Postal Workers Union, AFL CIO v. U.S. Postal Serv., 254 F. Supp. 2d 12, 16 (D.D.C. 2003) (quoting Green v. Ameritech, 200 F.3d 967, 977 (6th Cir. 2000)).

"[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 599 (1960). Judicial deference to the arbitration process suggests that the appropriate remedy in this situation is remand to the original arbitrator. See id.; see also Am. Postal Workers Union, 254 F. Supp. 2d at 16–17 (collecting cases). USPS complains that PPOA requested enforcement rather than remand in its petition and cannot now change its mind. See Reply at 8. But "the court may not attempt to enforce an award that is ambiguous or indefinite" and remand is appropriate "to ensure that the court 'will know exactly what it is being asked to enforce.'" Am. Postal Workers Union, 254 F. Supp. 2d at 15 (collecting cases). The Court will therefore remand the case to the original arbitrator, Barry E. Simon, and retain jurisdiction over the matter. The Union shall inform the Court of the arbitrator's decision as soon as it is issued.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [Dkt. No. 1] Plaintiff's Petition to Confirm And Enforce Arbitration Decision is GRANTED in part and DENIED in part. The Arbitration Award [Dkt. No. 1-1] is hereby confirmed. It is further

**ORDERED** that [Dkt. No. 12] Defendant's Motion to Dismiss is DENIED. It is further

12

**ORDERED** that [Dkt. No. 15] Plaintiff's Cross-Motion to Confirm the Award is DENIED as moot.  It is further

**ORDERED** that the case is hereby REMANDED to the arbitrator, Barry E. Simon, for clarification on the question of Defendant's compliance with the award.

**SO ORDERED**.


Date:   February 28, 2024

                                                                CHRISTOPHER R. COOPER
                                                                United States District Judge