UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **POSTAL POLICE OFFICERS ASSOCIATION**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES POSTAL SERVICE**, <br><br> Defendant. | Case No. 23-cv-675 (CRC) |

## MEMORANDUM OPINION

In a third installment in this years-long dispute, the union that represents postal police officers asks the Court to enforce an arbitral award against the U.S. Postal Service as it relates to the extent of officers' law-enforcement authority off of USPS real property. USPS seeks to dismiss this case, claiming that it has already complied with the arbitral award. The Court will deny USPS's motion to dismiss and deny the Union's motion to enforce.

**I. Background**

This is the Court's third opinion related to this matter, and it directs the reader to the background it provided in the first two. See Postal Police Officers Ass'n v. USPS ("PPOA I"), 502 F. Supp. 3d 411, 415–17 (D.D.C. 2020); Postal Police Officers Ass'n v. USPS ("PPOA II"), 719 F. Supp. 3d 56, 59–61 (D.D.C. 2024). The Court will provide a brief overview of the important background details before recounting the events since the Court's last opinion.

The Postal Police Officers Association ("Union") represents postal police officers employed by the U.S. Postal Service. PPOA II, 719 F. Supp. 3d at 59. At all relevant times, the parties had a collective bargaining agreement, which incorporates the USPS Handbook. Id. That Handbook includes two provisions relevant here: IS-701 and IS-702. See id. at 59–60. Those

provisions, according to the Union, vest postal police officers with law-enforcement authority away from USPS real estate when engaging in "hot pursuit" or performing "mobile patrol or escort protection." Id. at 60.

In 2020, a USPS official issued the Bowers Memo, which stated the agency's position that postal police officers "may not exercise [any] law enforcement authority in contexts unrelated to Postal Service premises." PPOA II, 719 F. Supp. 3d at 59. The Union sued in this Court and initiated an arbitration proceeding against USPS, claiming that the Bowers Memo was contrary to law and violated the terms of the parties' collective bargaining agreement. Id.

The Court dismissed the Union's lawsuit in PPOA I. As the Court explained at the time, it could address only the narrow question of whether the Bowers Memo was *ultra vires*. PPOA I, 502 F. Supp. 3d at 418. The Court concluded that it was not. Id. at 422. Agency action is *ultra vires* if the agency acted unreasonably when interpreting an underlying statute. Id. at 418. The Court found that the underlying statute permitting USPS to employ postal police officers did not unambiguously prohibit USPS from limiting officers' authority as the Bowers Memo had done. Id. at 418–22. The Court concluded that USPS's interpretation was therefore reasonable and dismissed the Union's lawsuit for failure to state a claim. Id. at 422, 427. The Union did not appeal.

The Union had more success before the arbitrator. Concluding that the Bowers Memo violated the collective bargaining agreement, the arbitrator ordered: "The Bowers Memo is to be rescinded and the utilization of Postal Police Officers is to be governed by the provisions of Handbooks IS-701 and IS-702." PPOA II, 719 F. Supp. 3d at 60. The Union then petitioned the Court to confirm that award, and the Court granted that motion. Id. at 64–65. The Court observed, however, that the arbitral award was ambiguous in that it was unclear whether the

award required USPS to grant law-enforcement authority to postal police officers while they are engaged in hot pursuit or performing mobile patrol or escort protection duties. Id. at 63. The Court remanded to the arbitrator for further clarification on this point. Id. at 65.

On remand, the arbitrator opined that the relevant Handbook language "would indicate" that postal police officers "have policing powers" when engaged in hot pursuit, mobile patrol, or escort protection off-premises. Suppl. Award at 5. But he also stressed the limits of his jurisdiction, explaining that it was not within his purview to weigh in on what, if any, *statutory* limits existed on postal police officers' off-premises law-enforcement authority or USPS's ability to confer such authority. Id. The arbitrator added that, to the extent USPS "may define the limits of the law enforcement authority of" postal police officers, USPS "did so in Handbook IS-701 . . . and Handbook IS-702[.]" Id.

Following the supplemental award, the Union moved to enforce the award. By its telling, USPS is violating Handbook provisions IS-701 and IS-702, and therefore the arbitral award, by failing to recognize the off-premises law-enforcement authority that they confer upon postal police officers. Mot. Enforce at 1.

In response, USPS moved to dismiss on the grounds that this case is moot. Mot. Dismiss at 1. It insists it has complied with the arbitral award, leaving nothing for the Court to do. Id. It also points out that USPS does not dispute that postal police officers have law-enforcement authority when engaged in an off-premises hot pursuit that began on USPS premises, at least until any "break" in the pursuit. Id. at 2. But to the extent the award purports to require USPS to recognize broader off-premises law-enforcement authority for postal police officers, doing so would violate federal law because Congress did not confer such authority. Id. at 2–3.

3

## II. Legal Standards

### A. Mootness

A motion to dismiss as moot "is properly brought under Rule 12(b)(1) because mootness itself deprives the court of jurisdiction." Indian River Cnty. v. Rogoff, 254 F. Supp. 3d 15, 18 (D.D.C. 2017). Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). "[T]he Court must treat the complaint's factual allegations as true," but has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Delta Air Lines, Inc. v. Exp.-Imp. Bank of United States, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) (cleaned up). A court therefore "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Id. (quoting Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

### B. Motion to Enforce

"Courts grant motions to enforce judgments when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment." Heartland Hosp. v. Thompson, 328 F. Supp. 2d 8, 11 (D.D.C. 2004) (collecting authorities). "If the plaintiff has received all relief required by that prior judgment, the motion to enforce is denied." Id. (citing Watkins v. Washington, 511 F.2d 404, 406 (D.C. Cir. 1975)).

## III. Analysis

### A. Mootness

First things first: This case is not moot. USPS sole mootness argument is that it has complied with the arbitral award. But that argument is grounds for denying the Union's petition,

not dismissing it.  See Heartland Hosp., 328 F. Supp. 2d at 12 (denying motion to enforce where defendant had complied).  And here, the parties vigorously dispute the extent of USPS's obligations under the arbitral award and applicable federal law and whether USPS has complied with them.  Therefore, there remains a live dispute between the parties.

    B.  Motion to Enforce

The Court denies the Union's motion to enforce for two reasons: (1) the award does not require USPS to recognize the authority that the Union claims it does and (2) the Union has not demonstrated how such recognition by USPS would be lawful.

To begin, the Union's primary argument is that the arbitrator ordered USPS to recognize off-premises law-enforcement authority as consistent with the Handbook provisions—full stop. See Mot. Enforce at 8–9.  That reading, however, ignores the careful limitations that the arbitrator included in his ruling on remand, which make clear that the arbitrator was disclaiming any authority to identify the scope of postal police officers' off-premises authority.

When the Court remanded this case to the arbitrator, it asked him to clarify what he meant when he wrote in the initial award that "utilization of Postal Police Officers . . . be governed by" the relevant Handbook provisions.  PPOA II, 719 F. Supp. 3d at 64.  The arbitrator refined that question, explaining that the basic issue in dispute between the parties was whether the arbitral award purported to "bestow[] (or return[]) law enforcement authority to the Officers" for off-premises activities as specified by the Handbook provisions.  Suppl. Award at 5.  The arbitrator then explained that the language of the Handbook on its face appears to confer such law-enforcement authority.  Id.  But he elaborated that the officers' authority is also a question of statute—which is a separate issue beyond the arbitrator's domain.  Id.  He explained: "Whether

5

a statute defines the limits of that authority, or permits the Postal Service to define those limits, is not a matter of contract interpretation. That is a question for the courts." Id.

The arbitrator's distinction between contract and statutory issues generally tracks the limits that courts have recognized on arbitrators' authority. When parties to a collective bargaining agreement agree to arbitration, the arbitrator is responsible for interpreting the agreement and resolving any disputes under that agreement. PPOA II, 719 F. Supp. 3d at 64 (citing United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 599 (1960)). The arbitrator, however, cannot go beyond the agreement. Davis v. Chevy Chase Fin. Ltd., 667 F.2d 160, 165 (D.C. Cir. 1981). Issues outside the contract are then for courts to decide.

Against that legal backdrop, the arbitrator appears to have recognized that postal police officers' authority could be shaped by both contract and statute and weighed in on the contract issues but not the statutory ones. The arbitrator's reasoning makes sense. The officers are subject to a collective bargaining agreement that appears to specify their duties. At the same time, the officers are agency employees, and "it is axiomatic that administrative agencies may act only pursuant to authority delegated to them by Congress." Clean Air Council v. Pruitt, 862 F.3d 1, 9 (D.C. Cir. 2017) (cleaned up).

In light of the arbitrator's supplemental award, the Court finds that the best interpretation of the arbitral award is that the arbitrator gave no definitive answer about what authority postal police officers actually possess as a matter of law. As a result, the Court also finds that the arbitrator did not unconditionally order USPS to recognize postal police officers' off-premises authority. He at most found that the officers have such authority only if statutes give it to them or allow USPS to confer it upon them. Thus, in order to prevail on its motion, the Union must be able to demonstrate that such a statutory grant of authority exists.

The Union's sole argument that such authority exists is that the Court held as much in PPOA I. According to the Union, the Court "held" in PPOA I that 18 U.S.C. § 3061(c) "permitted the recognition of [off-premises] law-enforcement authority." Mot. Enforce at 12. And in its reply brief, the Union added that the Court had "definitively interpreted [Section 3061(c)] in [PPOA I]," and that "[t]he Court should reject the Postal Service's effort to relitigate this settled legal issue." Union Reply Brief at 7–8.

That the Court "definitively interpreted" Section 3061(c) in PPOA I is news to the Court. To the contrary, the Court repeatedly said that Section 3061(c) was ambiguous and could be read multiple ways. The Court began its analysis of Section 3061(c) with the text. It identified two textual ambiguities. First, it explained that the statute's text "tends to suggest, without quite making clear," that postal police officers' law-enforcement authority was limited to USPS's real property and did not cover postal chattels. Id. at 419. Second, it explained that, even if the statute's text did confer off-premises authority, it "left a separate question open for interpretation": Whether USPS could nonetheless limit off-premises authority if it wished to do so. Id. at 421. Given these textual ambiguities, the Court proceeded to analyze the legislative history, explaining that it "can serve to inform the court's reading of an otherwise ambiguous text[.]" Id. (quoting Recording Industry Ass'n of Am., Inc. v. Verizon Internet Servs., Inc., 351 F.3d 1229, 1237 (D.C. Cir. 2003)). It then concluded that the legislative history was also "ambiguous." Id. at 422. Because the text was ambiguous and the legislative history was ambiguous, the Court ultimately concluded that Section 3061(c) "is ambiguous with respect to the issues at the heart of this case." Id. So to summarize, PPOA I held that Section 3061(c) is

7

ambiguous three times over: Its text is ambiguous, its legislative history is ambiguous, and its overall meaning is ambiguous.[1]

Given PPOA I's constant refrain, the Court struggles to see how the Union could have read that decision to have "definitively interpreted" Section 3061(c). At the very most, the Court held that one could plausibly interpret the statute as the Union now suggests. It did not say that one must, or even should, do so. The Union even acknowledges that the Court "held that the governing statute—18 U.S.C. § 3061(c)—*is ambiguous and permits multiple interpretations*." Union Reply Br. at 7 (emphasis added). Apparently, the Union forgot about the second half of that quote just one page later when it said that the meaning of Section 3061(c) was "settled" by the Court. Id. at 8. If the Union wishes PPOA I had resolved the meaning of Section 3061(c), it should have appealed the Court's decision five years ago.

The Union also missed the fact that much of PPOA I's analysis in fact supports USPS, not the Union. The Court opined that the most likely reading of Section 3061(c) is that Congress intended for postal police officers to "protect postal real estate rather than postal chattels." PPOA I, 502 F. Supp. 3d at 419. That reading, the Court explained, is a more natural fit for how Section 3061(c) uses the word "property," even if the statute does not expressly define the term. Id. at 419–20. The Union fails to acknowledge any of this analysis or explain why the Court's view of what Section 3061(c) likely means is wrong. Indeed, when USPS pointed out what the

---

[1] When the Court decided PPOA I, it did so under D.C. Circuit precedent applying Chevron deference in cases challenging agency action as *ultra vires*. 502 F. Supp. 3d at 418 (citing Aid Ass'n for Lutherans v. USPS, 321 F.3d 1166, 1174 (D.C. Cir. 2003)); see Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 866 (1984). The Supreme Court, of course, recently overruled Chevron. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412 (2024). In light of the Supreme Court's overruling of Chevron, the D.C. Circuit may wish to revisit its case law on *ultra vires* review of agency action. This Court, as an inferior court, leaves that to the Court of Appeals. See United States v. Torres, 115 F.3d 1033, 1036 (D.C. Cir. 1997).

Court wrote in PPOA I, the Union dug in its heels, accused USPS of trying to "relitigate" matters, and claimed the issue was "settled[.]"  Mot. Dismiss at 27; Union Reply at 8.

Beyond its transmogrification of PPOA I, the Union offers no further argument why Section 3061(c) permits or requires USPS to confer off-premises law-enforcement authority to postal police officers.  The Union did not argue, for example, that the statute could be interpreted to permit off-premises hot pursuits, escort protection, and mobile patrols because such activities are a means of protecting USPS real property.  Nor has the Union identified any other statutes that either authorize USPS to grant off-premises law-enforcement authority or directly confer the authority upon postal police officers.  By failing to advance any of these arguments, the Union has forfeited them.  Moore-Davis v. Dep't of the Navy, 694 F. Supp. 3d 116, 127 (D.D.C 2023); see also Att'y Gen. of U.S. v. Wynn, 636 F. Supp. 3d 96, 106 (D.D.C. 2022) (declining to reach possible interpretations of a statutory provision where plaintiff did not raise any).

At bottom, the Court declines to do the Union's work for it.  As the movant, the Union bears the burden of demonstrating that USPS has not complied with the arbitrator's award.  See Heartland Hosp., 328 F. Supp. 2d at 11.  To do so, it must first prove what the award actually required of USPS.  In that, the Union has failed twice over.  First, the award does not sweep as broadly as the Union claims.  And second, the Union has not demonstrated that USPS actually has the statutory authority to do what the Union wants.  The Court therefore denies the Union's motion to enforce.

### IV. Conclusion

For these reasons, the Court denies USPS's motion to dismiss the case as moot and denies the Union's motion to enforce. A separate Order follows.

                                                                                                   _____
                                                                                                   CHRISTOPHER R. COOPER
                                                                                                   United States District Judge

Date: July 14, 2025